UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TINNY SURI,<br><br>    Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, NA,<br><br>    Defendant. | Case No.  21-10866<br>Honorable Laurie J. Michelson<br>Magistrate Judge Curtis Ivy, Jr. |

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [105]**

Tinny Suri alleges that Wells Fargo reported inaccurate and misleading information to TransUnion, Experian, and Equifax (collectively, the "credit reporting agencies" or "CRAs"). Suri says Wells Fargo inaccurately reported his account as having been "charged off" following his wife's bankruptcy, which caused his credit score to drop and lenders to surmise that the account was delinquent or unpaid. Following the bankruptcy, the Suris and Wells Fargo entered a reaffirmation agreement, and Suri timely paid the account off in full. But Wells Fargo continued to report it as having been charged off, even after Suri filed disputes with the CRAs.

So Suri sued Wells Fargo for violations of the Fair Credit Reporting Act. (*See* ECF No. 1.) In time, Wells Fargo moved for summary judgement. (ECF No. 105.) For the reasons explained below, the Court will grant the motion.

## I. Background

As Wells Fargo seeks summary judgment, the Court accepts the facts in the light most favorable to Suri. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

On June 11, 2015, Debra Suri, Tinny Suri's wife, obtained a home projects Visa credit card from Wells Fargo to finance a gutter-protection system. (ECF No. 105-2, Page ID.2397; ECF No. 1, PageID.3.) Debra Suri signed the application on her and Tinny Suri's behalf as co-borrowers. (ECF No. 105-2, PageID.2604.) And as part of the application, the Suris agreed to the terms of the Visa credit card agreement. (ECF No. 105-2, Page ID.2419–2425, 2605.)

Under these terms, a bankruptcy filing by either Tinny or Debra Suri constituted an event of default. (ECF No. 105-2, PageID.2421.) The Suris made timely payments to Wells Fargo for several years.

On April 3, 2018, Debra filed for bankruptcy. (ECF No. 105-4.) In her petition, Debra listed the credit card account with Wells Fargo as an unsecured claim, and listed Wells Fargo as one of her creditors. (ECF No. 105-2, PageID.2622–2623; ECF No. 105-4, PageID.2861.) On April 5, 2018, Wells Fargo received notice of Debra's bankruptcy petition. (ECF No. 105-5.) The next day, Wells Fargo closed the credit card account, sent notice to the Suris of the closure, and charged off the remaining $3,067 balance. (ECF No. 105-2, PageID.2399.) That same day, Wells Fargo sent the Suris a monthly statement indicating that it had charged off their account. (*Id.* at PageID.2000, 2429.) Tinny Suri does not dispute any of this, and he acknowledges his

wife's bankruptcy was a default event under the cardholder agreement. (*Id.* at PageID.2610.)

About a month after the charge off, Wells Fargo and the Suris entered a "reaffirmation agreement" under which the Suris would pay off the remaining balance over time. (ECF No. 105-2, PageID.2431–2443.) The Suris made monthly payments to Wells Fargo and paid off the account in full as of March 2020. (*Id.* at PageID.2401.)

Wells Fargo says it accurately reported the Suri's monthly payment status to the CRAs. (ECF No. 105-2, PageID.2401.) This included reporting the payment amount in the "Actual Payment Amount" field of Wells Fargo's monthly report. (*Id.*) During the period between April 2018 (when the account was closed) and March 2020 (when the Suris paid the account in full), Wells Fargo never reported the account as having a missed payment in the payment history profile section of its monthly credit report. (*Id.*) During that timeframe, for each month, Wells Fargo contends that it reported either "0," which signifies zero payments past due, or "D," which signifies that no payment history is available or reported in the payment history profile for the respective month. (*Id.*)

The chart below summarizes the account payment history that Trans Union had on record at the time of Suri's disputes:

| Account History - Original | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Year | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN |
| 2020 | * | * | * | * | * | * | * | D | D | D | D | D |
| 2019 | D | D | D | D | D | D | D | D | D | D | D | D |
| 2018 | D | D | D | D | D | D | D | D | D | D | 0 | 0 |
| 2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 2016 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 2015 | 0 | 0 | 0 | 0 | 0 | 0 | E | E | * | * | * | * |
| 2014 | * | * | * | * | * | * | * | * | * | * | * | * |
| 2013 | * | * | * | * | * | * | * | * | * | * | * | * |

(ECF No. 105-2, PageID.2405 (poor quality original).)

In addition to reporting the monthly payment status, Wells Fargo also reported the "account status." Beginning in March 2020, Wells Fargo began reporting the "account status" of the Suris' credit card account as "64." (*Id.* at PageID.2402.) This account status denotes that the account was paid in full after having been charged off. (*Id.* at PageID.2402, 2444.) Prior to March 2020, although Wells Fargo had already charged off the account, it was reporting an account status of "11" to the CRAs, which signifies a "current account." (*Id.* at PageID.2403–2405.) The chart below shows Wells Fargo's monthly reporting from the start of 2020 through June 2020, when Wells Fargo stopped reporting on the account:

| Reporting Date | Account Status | Last Payment Date | Amount of Last Payment |
|---|---|---|---|
| June 2020 | 64 = Paid in full, was a charge off | March 29, 2020 | $187.44 |
| May 2020 | 64 = Paid in full, was a charge off | March 29, 2020 | $187.44 |
| April 2020 | 64 = Paid in full, was a charge off | March 29, 2020 | $187.44 |
| March 2020 | 64 = Paid in full, was a charge off | March 29, 2020 | $187.44 |
| February 2020 | 11 = Current account | February 2, 2020 | $150.00 |
| January 2020 | 11 = Current account | January 2, 2020 | $150.00 |

4

(ECF No. 105-2, PageID.2403–2405.)

Suri challenges Wells Fargo's reporting of his account as having been charged off. He alleges that it indicates that "the account is no longer recoverable because the consumer has stopped paying." (ECF No. 1, PageID.5.) According to Suri, the information supplied by Wells Fargo to the CRAs was not only false, but it also caused his credit score to drop from 780 to 670. (ECF No. 1, PageID.6.) Suri contends that a mortgage broker apparently understood the charge off to reflect a delinquency on the Wells Fargo account, in that he failed to qualify for the mortgage terms he sought. (*See* ECF No. 113, PageID.3728.)

Before filing this lawsuit, Suri submitted four disputes with the CRAs about Wells Fargo's designation of his account as a charge off. (*See* ECF No. 105-2, PageID.2458–2472.) Suri first disputed the account's status and history on the basis that the account was not included in his wife's bankruptcy filing, stating that "[m]y wife was a joint signer on the account[,] she filed for bankruptcy and the courts did not allow this loan to be included or approved in her bankruptcy[,] [w]e have documents showing all payments [were] paid in full." (*Id.* at PageID.2458–2459.) Suri's second dispute was materially the same. (*Id.* at PageID.2462.) Suri's third dispute provided that the "claims [were] paid before collection or charge-off" and that the "claims company will change." (*Id.* at PageID.2466.) Suri's final dispute to TransUnion alone included a more detailed explanation. Suri stated that he had no idea there was a charge off on "his perfect credit history" until he was notified via a denial letter for a new credit card. (*Id.* at PageID.2472.) He challenged the

designation of the account as a charge off, explaining that "this was not a mistake on [his] part, but a clerical error in reporting from Wells Fargo." (*Id*.) In support of his dispute, he attached the reaffirmation agreement, noting it stated that the Suris would pay the account in full, and that the account would not be subject to the bankruptcy. (*Id*.) He also attached his bank payment history showing he "paid the balance in full during the 60-month agreed to term" and noted that his "credit report states [that he] stopped payment over 1.5 years ago, which is incorrect." (*Id*.)

After receiving notice of each of Suri's disputes, Wells Fargo says it took the following investigatory steps: (1) reviewed the specific dispute Suri raised; (2) analyzed all documents provided by the CRA in connection with the dispute; (3) compared the information contained in the dispute with the information shown in Wells Fargo's system of record; (4) analyzed all information in the system of record concerning the specific dispute raised; (5) assessed third-party information outside of Wells Fargo's system of record if the dispute necessitated it; and (6) prepared a response to the CRA verifying, amending, or deleting the disputed information as appropriate. (ECF No. 105-2, Page ID.2403–2404.)

After investigating each of Suri's disputes, Wells Fargo responded to the CRA confirming that Suri's account was properly being reported as paid in full after having been charged off. (*Id*. at PageID.2405–2411.) After Suri's first dispute, in the payment history profile section of the response, Wells Fargo listed "0" for the months between July 2015 and February 2020, indicating no payments past due in this period. (*Id*. at PageID.2405.) After Suri's second dispute, Wells Fargo updated the response in the

6

payment history section for the months between April 2018 and February 2020 from "0" (no payments past due) to "L" (charge-off). (*Id.* at PageID.2407.) After Suri's third dispute, in the payment history profile section of the response, Wells Fargo listed "0" for the months between July 2015 and July 2020. (*Id.* at PageID.2409.) And after Suri's final dispute, in the payment history profile section of the response, Wells Fargo updated the information listed for the months between April 2018 and March 2020 from "0" to "L." (*Id.* at PageID.2411.) For April 2020 through February 2021, Wells Fargo reported "D," which signifies that no payment history is being reported for that month. (*Id.*)

Suri's complaint alleges that his disputes with the CRAs challenged the accuracy of the following information reported by Wells Fargo: (1) that the account was charged off; (2) that no data was available concerning Suri's monthly payments after February of 2018; (3) the reporting of the payment history of the account to reflect that payments were not made; and (4) "a special comment, also indicating that the account had been charged off before it was paid in full." (ECF No. 1, PageID.4.) Wells Fargo agrees that Suri raised the charge off designation in his disputes to the CRAs. (ECF No. 105, PageID.2370.) But it maintains the other claimed disputes amount only to a challenge of the accuracy of the charge off designation, and that Suri confirmed this understanding in his deposition testimony. (*See* ECF No. 105-3, PageID.2673–2677.) Suri disagrees.

## II. Legal Standard

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Or stated less formally, after construing the evidence in the light most favorable to Suri, if this Court believes that no reasonable jury could find for Suri on his claims, Wells Fargo is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## III. Fair Credit Reporting Act

The Fair Credit Reporting Act is designed to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007)). "Under the FCRA, those who furnish information to consumer reporting agencies have two obligations: (1) to provide accurate information; and (2) to undertake an investigation upon receipt of a notice of dispute regarding credit information that is furnished." *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 517 (6th Cir. 2019) (citation omitted).

The FCRA "creates a private right of action" for consumers to enforce the duty imposed under § 1681s–2(b) (that furnishers of information investigate upon receiving notice of a dispute), but not the requirement under § 1681s–2(a) (that furnishers of information initially provide accurate information to CRAs). *See Boggio*, 696 F.3d at 615 (stating the FCRA "expressly precludes consumers from enforcing

8

the requirement that furnishers, under § 1681s–2(a), initially provide complete and accurate consumer information to a CRA"). A "consumer is permitted to demonstrate that a furnisher negligently breached one of [the five duties identified in § 1681s–2(b)], under § 1681o, or willfully breached one of them, under § 1681n." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018).

The parties disagree about the scope of the disputed information at issue here, the accuracy of Wells Fargo's reports to the CRAs, and the adequacy of its investigation. The Court will take each in turn.

### A. Scope of the Dispute

As an initial matter, the Court considers the scope of Suri's disputes with the CRAs.

The Sixth Circuit has repeatedly held that "consumers must file a dispute with a [CRA] to trigger the furnisher's duty to investigate under § 1681s–2(b)." *See Scott*, 936 F.3d 509, 517 (6th Cir. 2019); *see also Boggio,* 696 F.3d 611 at 616 (holding that "consumers may step in to enforce their rights *only after* a furnisher has received proper notice of a dispute from" a CRA (emphasis added)). And a furnisher's duty to investigate only extends to information that a plaintiff actually disputed to the CRAs since the dispute puts the furnisher on notice of the alleged inaccuracy. *See generally Hussey v. Equifax Info. Servs., LLC*, 592 F. Supp. 3d 688 (W.D. Tenn. 2022) (finding that to state a claim for willful or negligent violation of § 1681s–2(b) "a plaintiff must allege (1) that the furnisher received notice from a CRA that the plaintiff was

9

disputing the *information at issue*, and (2) that the furnisher did not comply with its statutorily required duties" (emphasis added)).

So Suri's claim can only be based on information that he actually disputed to the CRAs and not on reported information that he only now challenges. Put differently, Wells Fargo only had a statutory duty to investigate the allegedly inaccurate information that Suri actually disputed to a CRA.

Suri's disputes all focused on the accuracy of Wells Fargo reporting that his account was charged off. Suri's fourth and most comprehensive dispute clarified that he was disputing that his credit card account was a charge off. He alleged that this was inaccurate because the account had not been discharged in his wife's bankruptcy, because Wells Fargo and Suri had entered into a reaffirmation agreement following the bankruptcy, and because he had paid off the account via monthly installments pursuant to the reaffirmation agreement. (ECF No. 105-2, PageID.2458–2459.) Suri also disputed the alleged report that he stopped making payments on his account over "1.5 years ago" and the notation that there was "no additional payment history" reported on his account. (*Id.* at PageID.2458–2459.)

But now—for the first time at summary judgement—Suri raises disputes of a different kind: that Wells Fargo inaccurately reported two different dates of first delinquency, the charge off amount as $3,067 rather than $0, and the Equal Credit Opportunity Act status code of "2" instead of status code "T." But Suri did not raise these factual allegations in his complaint—he raises them for the first time in his response to Wells Fargo's motion for summary judgment. (ECF No. 113,

10

PageID.3737–3738.) It is well-established that a complaint cannot be amended in a brief opposing a motion for summary judgment. *See Tucker v. Union on Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005); *see also Hubbard v. Select Portfolio Servicing, Inc.*, No. 16-CV-11455, 2017 WL 3725475, at *3 (E.D. Mich. Aug. 30, 2017), *aff'd*, 736 F. App'x 590 (6th Cir. 2018), *reh'g denied* (June 28, 2018) ("[Plaintiff] cannot amend his complaint, which is the operative pleading in this matter, by simply including new factual allegations in his briefing in opposition to the motions for summary judgment.").

Accordingly, the Court will not consider these new alleged inaccuracies as a basis for Suri's FCRA claim.

### B. Inaccurate or Misleading

Before the FCRA imposes liability under a private right of action, a plaintiff must make a "threshold showing of inaccuracy[.]" *Pittman*, 901 F.3d at 628. To do so, he may show that the report was either "patently incorrect" or "misleading in such a way and to such an extent that it [could have been] expected to have an adverse effect [on the consumer]." *See Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 942–43 (6th Cir. 2020) (noting that same standard applied to 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681s-2(b)). And "courts assess the alleged inaccuracy in the context of the report as a whole." *Settles v. Trans Union, LLC*, No. 3:20-00084, 2020 WL 6900302, at *4 (M.D. Tenn. Nov. 24, 2020) (collecting cases). Taking the reported information as a whole, the Court finds it is neither inaccurate nor materially misleading.

11

First, take Suri's claim that Wells Fargo inaccurately reported that Suri failed to make payments on his account, presumably from April 2018 (when the account closed) through March of 2020 (when the account was paid off). But Wells Fargo never actually reported that. At the time of Suri's first dispute, TransUnion showed the account payment history for Suri's account as "D," which indicated that no payment history was reported or available for those months. (ECF No. 105-2, PageID.2405.) A notation signifying that no payment history was reported or available does not equate to reporting a failure to make payments or a delinquency. And Suri provides no evidence showing that the designation "D" on his payment history profile meant a delinquent or unpaid account.

Additionally, as mentioned earlier, the Court considers the alleged inaccuracy in the context of the entire report. *Settles*, 2020 WL 6900302, at *4. Even assuming the designation "D" inaccurately portrays Suri's payment history, the report as a whole does not indicate that Wells Fargo inaccurately reported Suri's payments. To the contrary, the TransUnion source-data reports provided by Suri—though limited to a sample of only a few months—show that Wells Fargo reported the exact amount of Suri's monthly payments during the disputed period. For example, the source-data reports from February, June, and July 2019, and February 2020, all show the amount of Suri's payments to Wells Fargo for each month in the "Actual Payment Amount" field. (ECF No. 115-5, PageID.5115, 5118, 5121.) And this is consistent with Wells Fargo's representation that it "consistently reported when a monthly payment was made on the [Suris' account,]" and following the reaffirmation agreement, "it

consistently reported each of the payments made on [Suri's account] to the CRAs…. includ[ing] reporting the payment amount in the 'Actual Payment Amount' field of Wells Fargo's monthly reporting." (ECF No. 105-2, PageID.2401.) Suri does not appear to challenge that Wells Fargo consistently reported the actual payment amount in the timeframe following the reaffirmation agreement. So, with this context, the Court finds that Wells Fargo did not inaccurately report to the CRAs that Suri failed to make payments on the account.

Next consider Suri's primary claim that Wells Fargo inaccurately reported his account as a charge off. This claim fails to persuade for multiple reasons.

First, Suri offers his own definition of a charge off. He contends that a charge off is defined as a notation for an "account [that] is delinquent, [] unpaid, and can't be collected." (ECF No. 113, PageID.3734.) But, says Suri, none of these markers apply here. His account was never delinquent or unpaid. It was not discharged in his wife's bankruptcy and the parties entered into a reaffirmation agreement indicating that Suri would continue to make payments on the account. And Suri, in fact, made all monthly payments on the account until it was paid in full. Considering this, says Suri, Wells Fargo's report that the account was charged off was inaccurate and misleading.

But even assuming these underlying facts are true, the Court is not convinced that his definition is correct. Suri provides no admissible evidence or legal support showing that a charge off is defined as a designation that signifies only an account that is delinquent, unpaid, and cannot be collected. Instead, a "charge off" is a term

of art for credit providers and understood as writing off a debt as a loss because payment is unlikely. *See Makela v. Experian Info. Sols., Inc.*, No. 6:21-CV-00386, 2021 WL 5149699, at *3 (D. Or. Nov. 4, 2021) (citing Charge Off, Black's Law Dictionary (11th ed. 2019)). "The law is well settled that a charge-off is the correct reporting when a creditor writes off a debt it is unlikely to collect and converts its accounting from a receivable to a loss." *See, e.g.*, *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016) ("Charging off a debt does not diminish the legal right of the original creditor to collect the full amount of the debt."); *Ostreicher v. Chase Bank USA, N.A.*, No. 19-8175, 2020 WL 6809059, at *4 (S.D.N.Y. Nov. 19, 2020) ("[A] creditor charging off or writing off a debt is simply an internal accounting action by which the creditor stops carrying the debt as a receivable because the chances of collecting it are so low."). Thus, Suri's definition of a charge off is too broad. "Charge off" does not mean that the account was delinquent or unpaid. Instead, it reflects Wells Fargo's belief that payment was unlikely.

Resisting this definition, Suri relies on the Credit Reporting Resource Guide to argue that a genuine dispute of material fact exists about whether Wells Fargo accurately reported the account as a charge off. (*See* ECF No. 113-2, PageID.3752). The CRRG is a report created by the Consumer Data Industry Association to "establish standards for the consumer reporting industry." (*Id.* at PageID.3766.) Suri offers the CRRG as evidence that a charge-off designation was inaccurate here per industry standards and that his account should have been reported as "current" despite his wife's bankruptcy. (ECF No. 113, PageID.3727.) But numerous courts

14

have declined to apply the CRRG, finding it to be inadmissible hearsay. *See Euring v. Equifax Info. Servs., LLC*, No. 19-CV-11675, 2020 WL 1508344, at *7 (E.D. Mich. Mar. 30, 2020) (finding that "the cited guidelines of the CRRG are out-of-court statements by an industry group," and are inadmissible in deciding summary judgment motion); *Cowley v. Equifax Info. Servs., LLC*, No. 2:18-cv-02846, 2019 WL 5847851, at *2 (W.D. Tenn. Nov. 7, 2019) (absent expert authentication, CRRG is "inadmissible hearsay"). So this Court will not consider such a submission on summary judgment. *See Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) ("[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded.")

Suri also says Federal Trade Commission guidance and Wells Fargo's own internal charge-off policies support his argument that the account should not have been reported as charged off.

Start with the FTC guidance. Suri argues that an FTC advisory opinion stands for the proposition that under the FCRA "data furnishers should not report accounts included in a bankruptcy as charged off unless the account was charged off prior to the bankruptcy." FTC, Advisory Opinion Letter to Lovern (April 24, 1998), https://www.ftc.gov/legal-library/browse/advisory-opinions/advisory-opinion-lovern-04-24-98 [https://perma.cc/Z7UQ-ZPG6]. Suri says Wells Fargo charged off his account after his wife's bankruptcy, which was thus inconsistent with *Lovern*. But *Lovern* dealt with designating an account that was discharged in bankruptcy as charged off. *Id*. However, the Suris' account was not discharged in bankruptcy. The

15

account was only listed on a bankruptcy petition and subsequently reaffirmed. So *Lovern* does little for Suri's argument that Wells Fargo improperly reported the account as charged off. Additionally, Suri ignores subsequent FTC guidance, which states that the FCRA does not prohibit a data furnisher from charging off a debt following the filing of a bankruptcy petition. FTC, Advisory Opinion to McCorkell (June 3, 1999) (agreeing that "nothing in the FCRA . . . prohibits a creditor from 'charging off' an account, whether before or after the filing of a bankruptcy"), https://www.ftc.gov/legal-library/browse/advisory-opinions/advisory-opinion-mccorkell-06-03-99 [https://perma.cc/3B4L-KQ2X].

Accordingly, the cited FTC guidance does not support Suri's claim.

Suri also fails to establish a factual dispute that Wells Fargo's April 6, 2018, charge off was inconsistent with its policy, and thus, that Wells Fargo should not have reported the account as charged off. Wells Fargo's policy provides that for bankruptcy accounts, "unless it can be demonstrated and documented that repayment is likely to occur, accounts in bankruptcy should be charged off according to the following guidelines." (ECF No. 115-1, PageID.4320) (filed under seal) The guidelines for secured accounts state that they "will be written down to the net realizable value within 60 days of notification of bankruptcy filing, or at normal policy guidelines." (*Id.*) The policy also explicitly says, "to further clarify this policy it is permissible to recognize bankruptcy Losses as soon as the Loss is apparent but no later than the timeframes listed." (*Id.*)

16

Here, Wells Fargo charged off the remaining balance on Suri's account one day after receiving notice of Suri's wife's bankruptcy filing, which listed the account as an unsecured debt. Nothing in Wells Fargo's policy indicates that it was not entitled to charge off the debt so quickly. To the contrary the policy explicitly clarifies that a charge off is proper as soon as a loss is apparent. And at the time of the charge off, Wells Fargo reasonably determined that it was unlikely to receive payment on an unsecured debt listed in Suri's wife's bankruptcy filing. It is again of no moment that the Suris subsequently entered into a reaffirmation agreement—Wells Fargo had no way of knowing that the Suris would later agree to reaffirm their debt at the time of the charge off. So even taking the charge-off policy in the light most favorable to Suri and assuming that the reaffirmation agreement would have made the charge off inconsistent with Wells Fargo's policy, the charge off was still proper since it occurred over a month before Suri executed the reaffirmation agreement.

Suri does not dispute that Wells Fargo actually charged off the account. (ECF No. 105-3, PageID.2634–2635, 2654; ECF No. 113, PageID.3724.) Suri also does not dispute that his wife filed for bankruptcy and listed the account as an unsecured claim. And he concedes that the bankruptcy was an event of default under the card agreement. (ECF No. 105-3, PageID.2609, 2610, 2622–2623.) Suri only disputes whether it was accurate for Wells Fargo to report the account as a charge off even though the account was never delinquent, and the parties entered into a reaffirmation agreement after the filing of the bankruptcy. But for the reasons already stated, it was. And Wells Fargo was entitled to collect the charged-off debt.

17

*See Hinkle*, 827 F.3d at 1297 ("Charging off a debt does not diminish the legal right of the original creditor to collect the full amount of the debt.").

Importantly, Wells Fargo did not just report Suri's account as charged off. Instead, it reported the account as "paid in full, was a charge off." (ECF No. 105-2, PageID.2403–2405.) Thus, Wells Fargo made it clear to the CRAs that the account was paid in full. And this reporting is undisputedly accurate—Wells Fargo charged off the account and the Suris subsequently paid it in full per the reaffirmation agreement.

So, considering the evidence in the light most favorable to Suri, the Court cannot find that there is a genuine dispute of material fact that Wells Fargo inaccurately reported the Suri's account as a charge off, nor can the Court find that Wells Fargo's reporting of the charge off was misleading or indicative that his account was delinquent or unpaid.

### C. Reasonable Investigation

Suri also argues that Wells Fargo failed to conduct an adequate investigation following the receipt of his dispute letters as required by 15 U.S.C. § 1681s-2(b)(1). (ECF No. 1, PageID.6–7.) But a threshold showing of inaccuracy or incompleteness is necessary for a successful claim under § 1681s-2(b). *See Pittman*, 901 F.3d 619 at 630 (6th Cir. 2018); *see also Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) ("[I]f there is no inaccuracy, then the reasonableness of the investigation is not in play.").

As explained above, Suri failed to show that reporting his account as a charge off was inaccurate, misleading, or incomplete, and so as a matter of law, Wells Fargo is entitled to summary judgment on that finding alone.

### IV. Conclusion

In sum, Suri has not shown that Wells Fargo furnished misleading or inaccurate information to the CRAs about Suri's account. Accordingly, Wells Fargo's motion for summary judgment is GRANTED. A separate judgment will follow.

SO ORDERED.

Dated: May 3, 2023

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
